May it please the Court, Mr. Alexey. Bob Makarowski on behalf of RG Construction. This is our appeal from a decision entered by the arbitrator, then reversed in part by the Commission, and then affirmed by the Circuit Court. It's our position that our client's due process rights were violated by the arbitrator in our objection to opinions from Dr. Silver, the treater, and Dr. Nam, the treater, going into evidence without our ability to cross-examine. It was always our position prior to the matter appearing before Arbitrator O'Malley, and at the time we appeared before Arbitrator O'Malley, you'll see it's in the transcript, pages 238, 239, 240, we indicated to the arbitrator that we were not waiving our right to cross-examine these two positions. We felt that it was our constitutional due process right to do that. We provided Arbitrator O'Malley with the Poletti case, and the — So is Section 16 of the Act unconstitutional? It is if it is allowed to include or interpreted to include allowing opinions in versus just what the original intent was. The original intent was to allow medical and surgical records, not opinions as to causal connection. Well, you're not arguing a constitutional deprivation here. You're simply indicating that Section 16 does not allow for the admission of medical or surgical records that contain opinions. Right. And but if the Court was to take the position that under Section 16, if there are opinions as to causal connection beyond what medical care and treatment, then I would say that if that's the interpretation, then that section is unconstitutional. Did you make that argument in your brief? I did in my brief, and you will see where I've indicated to the arbitrator, and we've made an argument in the brief, that I have no problem with the medical records going in to show what the care and treatment is. That's what the purpose was. But my inability to cross-examine those physicians on their opinions, and you will see when you look at the arbitrator's decision, he relied on a to whom it may concern letter from Dr. Nam as to the issue of need for medical care and TTD. And there are multiple reliances on letters that Dr. Silver wrote as to the issue of causal connection. And I provided the Court with the Paletti decision, and I think you're familiar with the Paletti decision. Let me just ask a couple of questions to clarify. Sure. You're not saying that section 16 wasn't complied with here with the subpoena and certification? No. That's never been in dispute? That's not in dispute. Okay. What I'm saying is that only allows into evidence medical and surgical care and treatment, not opinions from the physicians as to the material issue. So it's supposed to be rejected or excised? I mean, aren't most doctor's reports going to have some of this information? But you can't – that's the problem. Well, what happens now with that section and what the Petitioner's Bar does is they say that these records could go in under section 16. They have the doctors comment on causal connection, and that's their way of trying to get it in and abrogating my right to cross-examine witnesses. So they're trying to get it intentionally through the back door, is that what you're saying? That's correct, Your Honor. And that's not the purpose. But a medical diagnosis, you would agree that in medical records, medical diagnoses are all over the medical record. Correct. A medical diagnosis is an opinion, right? Well, medical diagnoses are, you know, what the doctor's opinion is as to the nature of the condition or ill-being. Okay. An opinion. And when I say that it's unreasonable to include that as medical and surgical care, what most doctors will testify if you ask them in a deposition, I have to give you a diagnosis before I can talk about the condition. Well, I want to be clear about what it is that you're saying is inappropriate here and relevant to section 16. What I'm saying is inappropriate is the opinion – Excuse me. I'm sorry. Medical and surgical matters, you say section 16 is inapplicable when seeking to submit matters of opinion into evidence. That's what you indicated in your reply brief. Correct. Matters of opinion can include diagnosis, prognosis, recommended treatment. Isn't that what you're defining in medical records? That's not what I'm arguing. I argue that you can't include in and you can't take my due process rights away allowing these physicians to give opinions as to the material issues in the case. Because you did cross-examine, right? I didn't have an opportunity to cross-examine. Did you object on hearsay grounds? I did. I said I object on hearsay grounds and inability to cross-examine these physicians. What are the material issues? Okay. The material issues are TTD, Your Honor, and causal connection on the left knee. We agreed as to the right knee, okay? We were disputing the causal connection between the left because of a two-year gap in care and treatment. We were also disputing the extent of TTD. Before we got to this hearing, we had a series of medical opinions and reports. The person did have an injury on December 18, 2018. We didn't disagree with that. He gave a history of falling on his right shoulder and both knees. He was initially treated at Concentra for a period of two months. Pain drawing was done right knee. Only complaints to the right knee. He was released to full duty by Dr. Cohen, an orthopedic surgeon, February of 2009. He then testified he found Dr. Nam in the neighborhood. He saw Dr. Nam in June of 2019. He only complained of the right knee. Dr. Nam only had findings to the right knee. No findings to the left knee or right shoulder. And he wrote the to whom may concern letter saying I didn't see this person until June, but he was disabled from February, contrary to what Dr. Cohen said when Dr. Cohen released him, up until the current time. He was then seen by Dr. Silver. Let me just interject something in the litany here. I think we understand the position, but let me ask you about the United Electric Coal Company case decided by the Illinois Supreme Court, which the Court held, quote, under certain circumstances, the probability of accuracy and trustworthiness of a document may serve as a substitute for cross-examination under oath. How does that jive with your argument? Okay. And I would cite to you, Your Honor, a case that you decided, this Court decided, where Mr. Alexie was the counsel for the claimant. Well, he's here today. Justice Hoffman wrote the opinion. It's W.B. Olson v. Industrial Commission, and that dealt with a due process argument under Section 14, where the Court and Justice Hoffman indicated a denial of an FCE is not a denial of due process. What Justice Hoffman did say, and I believe you all signed on on this case, is due process includes the right to present evidence and argue in one's own behalf, a right to cross-examine adverse witnesses. You've indicated, this Court has indicated in this case, that inability to cross-examine witnesses is a denial of my due process rights. Well, that's as soon as that case says that. Does that trump the Illinois Supreme Court's decision? Yeah. The Illinois Supreme Court case that you decided, Your Honor, doesn't say that I don't have a right to cross-examine witnesses. Right. But in some circumstances, it can be a substitute. So that's not a blanket rule. So you win every time you make the argument. No, Your Honor, I disagree with you. That Court has never, that decision never said that a party waives its inability to cross-examine adverse witnesses. If we take that to an extreme, if we take that Court argument the way you're interpreting it, then let's take the situation, let's say I get stopped for drunk driving or one of you gets stopped for drunk driving, the police officer puts me through all the appropriate tests, it affirms that I, you know, I was drunk, why should we then have the ability, it's better off for us to have the police officer out in the street protecting us than to have him spend all day in court proving that I was drunk. Everybody has a right, a constitutional right under the 14th Amendment. Guess what? If you're subject to a summary suspension, it would be coming in. Records can take the place of testimony. But as far as my conviction, I have the right to cross-examine that police officer. You have a right to cross-examine a police officer on a red light violation. Yes? How does my client lose the right to cross-examine these physicians on opinions where they're not under oath, okay, where I could go to Dr. Silver and contradict his testimony? Because when you look at Dr. Silver's records in November of 2009, when he saw him a year after the incident, he said there was no problem with the left knee. The left knee was fully healed. And he took that position for two years until after he got done with doing surgery on the right knee. And then he says, you know, it must have been overuse because, well, he didn't use it, yeah, he said it was coming on gradually. Well, if it was coming on slowly and gradually, you would think that in a two-year period, something would show up, it just doesn't go poof, all of a sudden it's there. All that information you just provided the court about Silver, where did that come from? That came from letters that he had in the file with the medical records. Counsel put into, he subpoenaed the medical records and Dr. Silver's medical records, there were these letters advising as to his opinion on causal connection. So you had all of that information that you're, you say you're going to use to cross-examine Dr. Silver. Right, right. And it's all before the arbitrator. Right. I didn't have the opportunity to discredit Dr. Silver. I didn't have the opportunity to get Dr. Silver out of there. But the arbitrator offered you a continuance to take the deposition, right? But he said at my cost. And there's nothing in the statute, there's nothing in any rule of evidence or case law that I'm familiar with where I have to pay the cost to bring on his witness and prove the case. If there's any case law, there's any statute that says that's true, then, yeah, I was wrong. But why should I have to pay $2,000 to prove up his case? Why is that not an opportunity to cross-examine, though? Because you're asking me to pay for something. That's his witness, Your Honor. If he's going to produce a witness, I should have the ability to cross-examine his witness, just like he had the ability to cross-examine any one of my physicians if he wanted. And, in fact, in Dr. Cohen's case, I wrote Dr. Cohen a letter saying, can you please clear up this issue for me? So he responded. You're not saying you didn't have the right to cross-examine. You had the right to cross-examine. No, I didn't have the right. No, I didn't have the right to cross-examine, and I'm not required. Unless you paid for it. Unless I paid for it. I'm not required to do that by any statute. Who's Dr. Carlson? Dr. Carlson was my independent medical evaluation. Did he review the employee's records and medical records? He found that there was no causal connection on the left side. But you had to pay him to testify. Is that the problem? He stipulated to the report. Dr. Bush-Joseph, who counsel used in the Olson case, was an agreed exam by both parties. And he said that the person was able to work until he had the surgery. I agreed to be stuck for the surgery that we were disputing. I paid for the surgery. My client paid for the surgery on the right knee. He was off from that surgery November of 2010 until March 24, 2011. My client paid for that TTD. Mr. Lexie didn't use it. We got too off the track on the hearsay. In fairness to you, why don't you wrap up on the other issues? Because, you know, we've asked you a series of questions about the due process, which is a very interesting argument. What about the rest of your case? Okay. The rest of the case, Your Honor, when if you feel my due process rights weren't violated, which I don't know how you can't, I think the court decided that inability to cross-examine witnesses is a doubt. We haven't decided that yet. Go ahead. In terms of the injury, the injury occurred on December 18, 2008. He complained of landing on his right arm and knees. He was seen at Concentra the same day, fouled for two months. He did a pain drawing right knee only. He went to Dr. Cohen at Concentra. Dr. Cohen examined only complaints right knee, only findings right knee. He released him to return to work full duty February of 2009. He found Dr. Nam in the neighborhood. Dr. Nam examined only complaints to the right knee, only findings to the right knee. He found nothing wrong with the left knee. He then went to Dr. Silver November of 2009. Dr. Silver examined. The only findings were to the right leg. Dr. Silver said he fully recovered from any injury that he may have had to the left leg. That's a year after. Because we had this dispute as to need for surgery, counsel and I agreed to go to a physician who we both respect, Dr. Bush Joseph. Dr. Bush Joseph did an evaluation of this individual, and he opined that surgery would be appropriate in this case, but that the petitioner was capable of working full duty, gave him a full duty release up until the point in time he had surgery. I lived up to my commitment. I accepted the surgery. My client paid for the surgery. We paid for the TTD for the surgery from November 30, 2010, to March 24, 2011. March 24, 2011, Dr. Silver said he's got this left leg problem. When you look at Dr. Silver's records, Dr. Silver's first home November of 2009, only problem right knee, no problem left knee, no findings to the left knee. Throughout the course of his care, there was no findings to the left knee until after we're done with the surgery. Then Dr. Silver writes a letter saying that he injured his left knee also in December of 2008, contrary to what his findings were when he initially saw him in November of 2009, and said it must have slowly developed. Now, that's an unbelievable statement because when you look at the records, Dr. Bush Joseph said he asked him multiple times, do you have any problems with your left knee? The answer was no. He saw five physicians, no problems with the left knee. Dr. Carlson asked him on multiple occasions, do you have a problem with your left knee? No. If you accept his argument that it was slowly developing, if it was slowly developing, he would have had findings over the course of those multiple exams in a two-year period. What happened is, poof, we've got another degenerative problem, which Dr. Carlson called it, and now he wants to treat the person for the degenerative left knee problem. The commission awards that, even though the arbitrator agreed that it was only the right leg. The commission awards it, and now I'm up to 100 weeks of compensation, which is over $100,000. So my inability, you know, it's clear that if you don't think my due process rights were violated, the decision is against the manifesto aid of the evidence. It should only be the right leg, which we paid for the surgery. It should be the 21 weeks of TTD, and whatever permanency is a result of that injury. We shouldn't be responsible for the left. I'm curious, if you were to cross-examine Dr. Silver, what are you going to get out of Dr. Silver? I'm going to show that he's not credible, and then the arbitrator could look at that, and the commission could look at that. Well, how are you going to do that? Don't you have the information there? No, I don't. I'm sorry, I'm still talking. I'm sorry. Thank you. Don't you have the ability to present all of that evidence to destroy credibility and argue it without his cross-examination? I don't, because the commission. What are you missing? Because the commission blindly accepts these opinions, and the only way that we're ever able to. You may blindly accept them anyway. No, but if you have the opportunity to take a deposition, I could show, I could go step-by-step, but I think I could convince the commission, or at least I should have the opportunity to try to convince the commission, how inconsistent his opinion is, not only based on his records, but based upon all of the other physicians who saw him. And I could say, doctor, you've taken the position that this solely developed. If that's your position, then that would mean that it was a ready, there was a process that began. Where is there any evidence of this process beginning and continuing up until the point of November or March of 2011? It's the same with Dr. Nam. I could take his records, which they relied on, and say, doctor, how can you say that the person was disabled when you weren't there February of 2009, when Dr. Cohen, an orthopedic surgeon, saw him and had no findings? The condition could have changed over the period of time, and when you saw him on June, I could have established then that his findings were not only wrong on TTD, but it was limited to the right leg. I have the right, my client has the right, just like counsel has the right, just like the petitioner has the right, to cross-examine any physician to get the basis of their opinion and try to discredit, if you can, what their conclusions are. That's everybody's right. That's eminently clear. Thank you. Counsel, you may respond. May it please the Court. Good morning, Your Honors. My name is Richard Alexie, and I'm here on behalf of the petitioner, Mr. Martinez. I will try and keep my argument to the confines of the record and not try and go off on tangents which are not contained in this record and the evidence introduced herein. It is apparent, at least in my naïve view, that in some fashion, Mr. Makarowski has personalized this case, and quite candidly, it alludes me as to why. But rather than deal with those objectives, I'm going to stick to the facts. First of all, as Mr. Makarowski knows, since he's a gray beard in this practice and he's been before this forum many times, as well as across the street and downstate, Section 16, even prior to the 2005 amendments, was a very broad-based section of the Act. How long has it been in the form that it is where it contains the language that the records shall be admissible without any further proof as evidence of the medical and surgical matters stated therein? How long is that statutory language? July 1st of 1975, if I remember correctly. I was a young lawyer then, and I remember the manic seismic shift among the business community with the amendments brought to the statute on July 1st of 1976 or 75. Has there been a constitutional challenge as to that language, that it is facially unconstitutional as violative of an individual's due process rights, as your opponent argued? Well, in my brief, I cite the Schaeffer case, which talks about a decision rendered by this body that found that there was not a violation of the due process rights when medical records are offered. But here's the situation in a nutshell. If we look at the syllogism of Mr. Makarowski, he would obviate the need to have a simple and summary procedure. This gentleman gets injured in 2008, and almost two years goes by while we go through various issues that, again, are not on the record. Counsel seemed to channel the brain of me and the commission and a few other individuals with regard to some kind of ersatz agreement with Bush, Joseph, or whatever. And then he boldly states on the record, I agreed to pay. I didn't realize counsel had that kind of power with regard to arching construction. That has edified me to his standing with regard to that respondent, and I'll take that into consideration in the future. However, that being said, the question is simply this. If Mr. Makarowski, as the arbitrator suggested during the preamble to the actual taking of evidence in this matter back in Wheaton, Illinois, many, many years ago, he could have subpoenaed Dr. Silver, he could have subpoenaed Dr. Nunn. He insists that it is not right, it is not appropriate, it's almost an outrage that his client would have to bear the expense of that. Well, Section 16 in its multitude of sections and verbiage contains provisions where the arbitrator has the power to assess and toll the costs for a myriad of issues, including witness fees. And you have seen records where doctors who are called to testify live, especially if they're an adverse witness, will be queried as to the amount of time they spent, what the cost was, with a prayer to the arbitrator to assess and toll those costs. Do they revert to the respondent who called them as a witness? Do they revert to the petitioner who was their treating doctor? So the issue of due process really is a nonstarter and a red flag, and Mr. Makarowski, in my experience in four other cases, has always raised this issue, and it has uniformly been decided. And it is not a violation of due process. If you choose to ignore your ability to get to the crux of the issue, which you so elegantly argue you would be able to destroy on cross-examination, then it seems it's a reasonable expenditure by the respondent to pay, as they would, Mrs. Makarowski, to engage in that inquiry, to pay whatever the doctor's costs are. And in the alternative, if they chose not to do that, subpoena power exists. We know what the statute provides. In case law says you send them a witness fee and the mileage costs. Happens over there all the time. And then what happens is there's a debate, an argument, a colloquy, and all kinds of debating going on with regard to, hey, who pays for this neurosurgeon, this orthopedic surgeon, this psychologist, what have you. But due process has not been violated here. Is it? Well, so Section 16, it doesn't apply. The use of medical and surgical matters within records, that provision doesn't apply to reports that are prepared in preparation and use in litigation. That's the key sentence. So, you know, you can see where your opponent, you know, may have a concern that there may be something contained within the stack of medical records that is masquerading as a report or a letter for use in medical care, but it's truly a report prepared for use in litigation. Now, is there anything of that type here in the records of Dr. Nam or Dr. Silver? No. No. Has there been anything identified in the brief as something arguably of that character? Well, in our brief, we identified the backdoor approach by Mr. Makarowski to go back to Dr. Cohen, a treating physician, with all the privileges attendant thereto to the patient, write him a letter to ask him to clarify his word this morning. I don't think the letter quite clearly says clarify, but that's a divorce the record. But he asked Dr. Cohen, and, of course, Dr. Cohen's credentials, his past history, his experience, and his attitudes with regard to workers' compensation isn't before you this morning, so I won't speak to that even though I have multiple anecdotes that I could share with you with regard to the eminent Dr. Cohen. In any event, the fact of the matter is that document, which Mr. Makarowski attempted to introduce into evidence as being a medical record, was summarily rejected by the arbitrator as clearly being for the purpose of litigation. Now, here's the interesting thing in our little corner of the world, workers' compensation. Every orthopedic doctor, every neurosurgeon, every physical therapist, every discipline in medicine that I have encountered in 39 years now, I guess it is, whatever, they have come to understand, they have come to learn, naively or appropriately, that in order to foster a relationship with the insurance company, to clarify the job, if you will, as one doctor recently testified at a cross-examination when I took his deposition, is so that we can aid and guide the adjuster in what, in fact, is the physical condition, what's the proposed remedy, and why it is your liability. Well, they don't say it's your liability. What do they say? This is related to the event that occurred. This is related to the injury that occurred. This is related to whatever. Dr. Silver didn't write me letters. He and I didn't communicate. In fact, when I got his charts, to be perfectly honest, forgive me for stepping outside the record for a second, I was astonished that he was having such an open communication with the adjuster. What Mr. Michalowski didn't talk about, what we discussed in front of the commission and quite candidly in the circuit court, where we once again argued the case as if the forum we were before were fact-finders in the case of the commission, yes, in the case of the circuit court, no, was the fact that the man, and forgive my departure from my sentence, counsel said, Silver found that his left knee had healed. Your honors, that word is not in his record. He said the symptoms, the symptoms have resolved. And in my brief, I cite extracts from each of the medical records documenting this man's left knee complaints. From the very beginning of his fall off those stilts, they document he landed on both knees. Those are questions of fact. They're to be resolved by those geniuses across the street. Have the geniuses in here? The geniuses in here have a higher calling. And that higher calling is, and this is why it's a tough job being you, you may read this evidence and you individually may say, Dr. Carlson made the most exquisite, eloquent representation of his opinion as to why that left knee is an outlier to this case. You may conclude that as an individual. And when you were a trial judge, that was your province. But as you sit here, and I know I'm singing to the choir to use a Southside euphemism, you and I both know, you better than I perhaps, probably, the job of deciding competing evidence is for the commission. As Justice Hoffman, and I'm sorry he's not here this morning, once asked me, sitting right there, I was standing here and he said, well, Mr. Alexie, they get a guy and you get a guy. They get a doctor and you get a doctor. So if the commission decides to pick theirs instead of yours, what are we supposed to do about it? Well, that is a very big simplification. It is a very big simplification. Mr. McCroskey is saying we're looking at the foundational aspect for the opinion that the physician is giving. Right. And he's saying that without cross-examination, you cannot impair that foundation. Correct. To allow the weight, the appropriate weight to be accorded. And I think that's really what we're talking about. Because it isn't I get one, you get two, so you win.  Correct. So how in this case, and the procedure that's being followed, is his right impaired to get at that foundational basis so that there can be a proper assessment of the weight to be accorded to, in this case, perhaps a causation opinion that's embedded in those records or a nature and extent issue? Section 16 gave him the power to subpoena the doctors. He avoided that. The dedimus potestatum section allowed him to file a pleading with the arbitrator of the commission to command and direct that we take the deposition of Dr. Nahum or Dr. Silker. He avoided that. At the time of trial, before we even started taking evidence, the arbitrator went on for pages in the record, trying to give him this opportunity to do that. And the response was, I don't want to bear the cost. I don't want to bear the cost. In essence, what you seem to be saying is he did, in fact, have the opportunity for cross-examination if he would have availed himself of certain standard procedures to do that. That is correct, Your Honor. That's what the statute provides. Well, and in addition, you've also indicated that there was a procedural mechanism for him to raise an objection to certain reports within the statute. And that was in Dr. Nahum's records, Dr. Silber's records, as being violative of Section 16. Correct. And did he avail himself of that mechanism? No. No. Was there a discussion of that? The record reflects that Mr. Makarowski went to the witness stand, placed the records of Dr. Silber and Dr. Nahum on the witness stand, went back to his chair before the forum, and then wanted to call the witnesses, codified in the record, the discussion between Arbitrator O'Malley and Mr. Makarowski when that effort was made. Well, that was sort of dramatic, wasn't it? It was innovative. It was very innovative. Affirm the decision. Let the man get his treatment so he can get on with his life. It's gone on long enough. Please. The commission decision should be affirmed. The circuit court determination is correct, and I believe you should affirm it. The due process argument is a red herring. Thank you very much for your time and attention. Mr. Makarowski? Section 16 is only to show care and treatment. It doesn't allow opinions in. If you look at the transcript, page 228 to 232, I did object to the records. I indicated to the arbitrator why I was objecting to the records. You'll see I made the same objection when the records were introduced. For counsel to suggest that I have to put his case in chief on, those doctors are his witnesses. They're adverse to my position on the case. For him to suggest that I have to bear the cost of $2,000 to take those depositions or whatever the charges would be, there is no statute that says I have to do that. Putting aside this issue about who should bear the cost of deposing witnesses, you indicated that you raised an objection. Specifically, what was your objection? Did you identify the specific records, and what was the remedy that you requested? Okay. I requested that those records not be admitted into evidence. Which ones? Dr. Silver and Dr. Nam. All of them? Yes. I said the only thing that those should be submitted for is medical care and treatment. I'm not waiving my right to cross-examine those physicians on the issues of TTD and causal connection. I made a two-page argument. Yes, I did make a dramatic presentation to show exactly what my problem was. That Dr. Silver, that Dr. Nam, they weren't under oath. I put the report on the stand to say, you put them under oath. You can't put a report under oath. I can't ask the report questions. I can't cross-examine. The Constitution clearly indicates I have the right to cross-examine all witnesses if I want. Counsel says I could have subpoenaed them in. Under the statute, if I subpoena a doctor in, I have to pay him his going rate. It's his witness. It's his burden of proof to put his witnesses on. I had my witnesses. He had the opportunity if he wanted to cross-examine or require me at any time with an IME. He could insist on the deposition of my IME doctor. I have to take it. I'm just curious if Dr. Nam's records contain no opinions. Let's say this was a very unusual set of records where there was no diagnosis in there. There was no prognosis. There was no recommendation as to treatment. This contains strictly Dr. Nam's observations of the claimant results of physical exam. You would be saying the same thing because you wouldn't have the opportunity to cross-examine Dr. Nam with zero opinions. I have the right to pick and choose whether or not I'm going to raise the question of whether or not I want to cross-examine. If his records were merely in, and I like his records merely in for the purpose of the fact that the findings were only limited to the right knee and he was only treating the right knee. The records had a to whom it may concern letter October 5th, 2009, which the commission relied on. The records of Dr. Silver had multiple letters that Dr. Silver sent to the respondent. Not at our request. We would never have anyone be treated by Dr. Silver. Not at our request, but he sent letters trying to get them to pick up the care and treatment. Those are opinions. Those aren't care and treatment. Well, and you heard, I was asking Mr. Alexie, that it could be subject to abuse where you have reports that are prepared for use in litigation. Masquerading is a medical report. And that would be something that you could key on and move to bar at the time of arbitration, right? Right. And his position was that I subpoena these under Section 16, so they all go in. And my position was, no, they don't all go in. I have the right to cross-examine the doctor on those opinions. I'm not waiving it. I raise my right to cross-examine. And if you interpret Section 16 to say that opinions could go in, and that waives my right to cross-examine, if that's the way you interpret that statute, then that statute is unconstitutional. Thank you. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement that this position shall issue.